UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEWARD PARTNERS GLOBAL ADVISORY, LLC, STEWARD PARTNERS HOLDINGS, LLC, and STEWARD PARTNERS MANAGEMENT HOLDINGS, LLC,<br><br>                              Plaintiffs,<br><br>              -against-<br><br>TRAVIS TUCKER,<br><br>                              Defendant. | 23-CV-6532 (JGLC)<br><br>**<u>OPINION AND ORDER</u>** |

JESSICA G. L. CLARKE, United States District Judge:

Travis Tucker provided a former colleague with an affidavit supporting that colleague's sexual harassment claims against Steward Partners. Tucker and the colleague are both former employees of Steward Partners. At the time, Steward Partners had terminated Tucker and was in the process of buying out his ownership stake. After learning of Tucker's affidavit, however, Plaintiffs sought to cancel their agreement to buy him out and later brought this lawsuit, alleging that Tucker breached their buy-out agreement by making disparaging comments about the company and by entering one of Steward Partners' offices after his termination. Tucker now moves to dismiss this action, arguing that the Speak Out Act prevents judicial enforcement of nondisparagement agreements used to silence employees from speaking out about incidents of workplace sexual harassment and assault. Tucker also argues that Plaintiffs failed to demonstrate that his post-employment visit to their office constitutes a breach of the buy-out agreement.

The Court finds that although Plaintiffs' claims may ultimately be barred by the Speak Out Act, the Court cannot yet dismiss on this ground. However, the Court agrees with Tucker that Plaintiffs failed to state a claim regarding his alleged post-termination office visit(s).

Tucker's motion to dismiss is thus GRANTED in part and DENIED in part. The Court also permits Plaintiffs leave to amend their breach of contract claims.

## BACKGROUND

### I.    Facts

The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Plaintiffs Steward Partners Global Advisory, LLC, Steward Partners Holdings, LLC, and Steward Partners Management Holdings (collectively, "Steward" or "Plaintiffs") are "an employee-owned, full-service partnership" that provide various financial services. ECF No. 3 ("Compl.") ¶ 1. Defendant Travis Tucker ("Tucker") worked as a financial advisor at Steward from May 14, 2014, until his involuntary termination on June 15, 2021. *Id*.

On July 15, 2021, the parties entered into a Separation Agreement (the "Separation Agreement") and annexed Redemption Agreement (the "Redemption Agreement"). *See* ECF No. 18-1. Under the Separation Agreement, Tucker must comply with a variety of conditions including, as relevant here, Sections 2 and 4 of the agreement in order to receive certain benefits. Section 2 of the Separation Agreement (the "Return of Property" clause) provides that Tucker will return all Steward property to the company and

> commit to deleting and finally purging any duplicates of files or documents that may contain Company information from any non-Company computer or other device that remains in [his] possession after [separating from Steward] . . . [and will] not copy or remove, or cause to be copied or removed, any of the Company's documents or records from the Company's premises without the prior written consent of a Company officer . . . or engage in any act which would cause damage or harm to Company records or property.

*Id*. at 3–4. Section 4 of the Separation Agreement (the "Non-Disparagement" clause) provides that Tucker will "not [] make any disparaging or negative statements concerning the Company,

any of its affiliated entities, any of its or their products or services, or any of its current or former officers, directors, employees, representatives or agents." *Id*. at 5.

Pursuant to the Redemption Agreement, Steward agreed to redeem Tucker's interest in Steward for $220,409.56, paid over twenty quarterly installments. *Id*. at 13–14. However, in the event of a breach or default, as defined in the Separation Agreement, the Redemption Agreement states that the redemption price for Tucker's interest is reduced to $0 and any monies paid to Tucker are to be returned to Steward. *Id*. at 14. As of the date of the Complaint, Steward made $44,080.51 in redemption payments to Tucker. Compl. ¶ 36.

## II.    Procedural History

On July 28, 2023, Plaintiffs filed a Complaint asserting that Tucker breached and is in default of the Separation Agreement by (1) "using and accessing Steward's confidential and proprietary information without prior written authorization of Steward management," (2) "making disparaging, negative and wrongful statements regarding Steward and its employees," and (3) "failing to repay the Redemption Repayments and other amounts required by the Separation Agreement and Redemption Agreement." *Id*. ¶¶ 39, 45. Specifically, Plaintiffs allege that following his termination, Tucker continued to enter one of Steward's offices and "directed Steward personnel to place trades on his behalf, without prior authorization from Steward and/or in violation of the Separation Agreement." *Id*. ¶ 31. On May 14, 2022, an attorney representing Steward sent Tucker "a letter, demanding that he cease the foregoing unauthorized conduct and further demand[ing] that Defendant close all Steward client accounts within thirty (30) days of receipt of that letter." *Id*. ¶ 32. However, Tucker allegedly did not close the client account for "at least an addition six" months. *Id*. Steward does not specify which provision of the Separation Agreement they believe this conduct violates.

Additionally, Plaintiffs allege that Tucker "disparag[ed] and otherwise caus[ed] harm, damage, injury and other wrong to Steward" by making "disparaging, negative and other wrongful statements about Steward and its employees, including in writing" in violation of Section 4 of the Separation Agreement. *Id*. ¶¶ 33–34. According to the Complaint, Tucker made disparaging statements about Steward and their employees in an affidavit he provided to a former Steward employee for use in a separate "post-employment matter with Steward." *Id*. ¶ 34. There appears to be no dispute that this "post-employment matter," as alleged in the Complaint, refers to allegations that the former employee was sexually harassed by certain wealth managers at Steward Partners. *See* ECF No. 19 ("Def. Mem.") at 3–4; ECF No. 21 ("Op.") at 6–7. Finally, Plaintiffs allege that these breaches constitute a default of the Separation Agreement and thus, pursuant to the Redemption Agreement, Tucker must return the $44,080.51 he received in redemption payments. *Id*. ¶¶ 36, 46.

Plaintiffs assert five causes of action: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, (4) unjust enrichment, and (5) quantum meruit. *Id*. ¶¶ 40–70.

On October 2, 2023, Tucker moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 17.

## LEGAL STANDARD

### I.    Motion to Dismiss

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion

only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## II.    Submission of Additional Documents

Typically, "[i]n deciding a motion under Rule 12(b)(6), the Court may consider only the facts stated on the face of the complaint, and in documents appended to the complaint or documents incorporated by reference in the complaint." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 02-CV-1363 (PKL), 2003 WL 21203503, at *3 (S.D.N.Y. May 22, 2003) (citing *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000)). However, the Court "may nevertheless consider" a document outside of the complaint "where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

"[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce" the same in its motion to dismiss. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005)

("Where a plaintiff has relied on the terms and effect of a document in drafting the complaint, and that document is thus integral to the complaint, we may consider its contents even if it is not formally incorporated by reference.") (cleaned up).

Here, Tucker submitted documents in connection with his moving papers that were not attached to the Complaint, including the: (1) Separation Agreement, (2) Redemption Agreement, and (3) affidavit he provided the former Steward Partners employee. *See* ECF No. 18-1. Plaintiffs' Complaint relies heavily upon the content of the affidavit as well as terms and effects of both agreements, and it is the alleged breach of each agreement that forms the basis of this suit. Thus, the Court may properly consider these documents in the context of this Rule 12(b)(6) motion.

## DISCUSSION

Tucker asserts four arguments in support of his motion to dismiss. First, he argues that Plaintiffs' claim for breach of the Non-Disparagement clause is barred by the Speak Out Act, 42 U.S.C. Section 19403, which provides that "no nondisclosure clause or nondisparagement clause agreed to before [a sexual harassment dispute] arises shall be judicially enforceable in instances in which conduct is alleged to have violated Federal, Tribal, or State law." 42 U.S.C. § 19403(a). *See* Def. Mem. at 10. Second, Tucker contends that even if Plaintiffs' claim for breach of the Non-Disparagement clause is not barred by the Speak Out Act, it is barred by judicial privileges under New York law that protect from liability statements made in the course of litigation. *Id*. at 18. Third, Tucker asserts that Plaintiffs allege insufficient facts to support a claim that he breached the Separation Agreement by "using and accessing Steward's confidential and proprietary information without prior authorization of Steward management." *See id*. at 22.

Finally, Tucker avers that each of Plaintiffs' non-breach of contract claims is "subsumed and barred by the breach of contract claims." *Id*. at 24.

The Court addresses each argument in turn, concluding that, at this junction, only Plaintiffs' claims regarding Defendant's use and access to Plaintiffs' property fail to state a claim. Accordingly, the Court GRANTS Defendant's motion to dismiss, in part, and grants Plaintiffs leave to amend the Complaint.

## I.    The Speak Out Act Is Not a Basis to Dismiss Plaintiffs' Claims

The Court cannot dismiss this action, at this juncture, based on the Speak Out Act. The Speak Out Act prohibits the judicial enforcement of nondisparagement and nondisclosure provisions in agreements between employers and current and former employees with respect to sexual harassment or sexual assault disputes. The Act's stated purposed is to "empower survivors to come forward, hold perpetrators accountable for abuse, improve transparency around illegal conduct, enable the pursuit of justice, and make workplaces safer and more productive for everyone." 42 U.S.C. § 19401. Enacted on December 7, 2022, the statute applies to "a claim that is filed under Federal, State or Tribal law on or after December 7, 2022" for breach of a nondisclosure and nondisparagement provisions agreed to before a sexual harassment or sexual assault dispute arises. *See id*. §§ 19401–19404.

Plaintiffs argue that the Speak Out Act "only applies to sexual assault or sexual harassment claims filed after December 7, 2022," and is therefore inapplicable here because "no sexual harassment [was] filed after December 7, 2022." Op. at 3–4 (quoting 42 U.S.C. § 19404). In support of their interpretation, Plaintiffs contend that the Act states that it only "pertains to 'judicial enforcement in instances in which [sexual harassment] conduct is alleged to have

violated Federal, Tribal or State law.'" Op. at 4 (quoting 42 U.S.C. § 19403(a)). This argument misinterprets the statute.

First, Plaintiffs misquote the statute. It does not contain the term "sexual harassment conduct," and the statute's title, which refers to "judicial enforceability of nondisclosure and nondisparagement clauses," specifically refutes this interpretation. 42 U.S.C. § 19403(a). More importantly, as referenced in the statute, the "claim[s]" required to be filed on or following December 7, 2022 are claims for breach of a nondisclosure and/or nondisparagement clause, not sexual assault or sexual harassment claims. Thus, for purposes of the Speak Out Act's applicability, it does not matter whether a sexual harassment claim was filed on or after December 7, 2022. What matters is the date that breach of the nondisparagement claim is filed. The relevant claims in this case were filed on July 27, 2023, well after the applicable date under the statute.

This interpretation is consistent with both the text of the statute and its stated purpose. The Speak Out Act does not refer to sexual assault or harassment claims and instead uses the terms "sexual assault dispute" and "sexual harassment dispute," which it defines to encompass more than just claims filed in a court. *See id*. § 19402 (emphasis added) ("The term 'sexual assault dispute' means a **dispute** involving a nonconsensual sexual act or sexual contact . . . . The term 'sexual harassment dispute' means a **dispute** relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."). As such, the word "claim" does not refer to claims for sexual assault or harassment.

Instead, the statute refers to "judicial[] enforceab[ility]" of nondisclosure or nondisparagement clauses. *Id*. § 19403(a); *see also id*. § 19403 (section titled: "Limitation on judicial enforceability of nondisclosure and nondisparagement contract clauses relating to sexual

assault disputes and sexual harassment disputes"). It plainly states that "[w]ith respect to a sexual assault dispute or sexual harassment dispute, no nondisclosure clause or nondisparagement clause . . . shall be judicially enforceable . . . ." *Id*. § 19403(a). This language makes clear that the claims referred to in the statute—and those that must be filed after December 7, 2022—are actions to enforce nondisclosure or nondisparagement agreements. Indeed, the only "claim" referred to in the statute is one brought to "judicially enforce" a nondisparagement or nondisclosure clause.

The Act's stated purpose further supports this interpretation. As discussed above, that purpose is to "[t]o limit the judicial enforceability of predispute nondisclosure and nondisparagement contract clauses relating to disputes involving sexual assault and sexual harassment." *Id*. Preamble. It allows victims and witnesses of sexual harassment to "speak out" even if they are subject to a nondisparagement agreement that would otherwise prohibit them from doing so.

Accordingly, the current action appears to be the type to which the Speak Out Act applies. Plaintiffs allege that Tucker breached the Non-Disparagement clause for statements he made in connection with a sexual assault dispute. And because Plaintiffs initiated this action after December 7, 2022, it was filed within the statute's applicable time frame. However, the Court cannot determine at this time whether the Speak Out Act bars Plaintiffs' claim. The statute only bars the enforcement of nondisparagement clauses agreed to *before a sexual harassment or assault dispute arises*. *Id*. § 19403(a). Here, the Complaint, and documents incorporated therein, do not indicate whether the parties entered into the Separation and Redemption Agreements

before the former employee's alleged sexual harassment dispute arose.[1] For that reason, the Court cannot dismiss Plaintiffs' claims to enforce the Tucker's nondisparagement agreement under the Speak Out Act.

## II.    Plaintiffs' Breach of Contract Claim Is Not Barred by Judicial Privilege

Tucker fails to prove that either the absolute privilege for witness statements made in connection with a judicial proceeding or the qualified privilege for pre-litigation statements by an attorney applies to this action.

New York law provides "absolute immunity from liability for defamation" for statements made by a witness in connection with a court proceeding. *See Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015) (internal citation omitted); *Arts4All, Ltd. v. Hancock*, 773 N.Y.S.2d 348, 351 (1st Dep't 2004). Tucker appears to argue that this absolute privilege bars the current action. *See* Def. Mem. at 18–19. However, neither party has alleged that Tucker's affidavit was used in connection with a court proceeding, or that one even exists. Nor is there anything before the Court that references a potentially relevant proceeding. Accordingly, the privilege is inapplicable here.

Tucker's reliance on the qualified privilege for pre-litigation statements made in connection with prospective litigation fares no better. This "more limited" privilege applies to

---

[1] Plaintiffs argue that the Court should find that the "sexual harassment dispute arose" when the alleged sexual harassment involving the employee *occurred*. Op. at 6–7. They point out that the nondisparagement agreement was signed in July 2021, and that the sexual harassment Tucker discussed in his affidavit occurred in or before April 2021. *Id*. at 7–8. And, as such, the non-disparagement agreement was executed after the "sexual harassment dispute arose," making the Speak Out Act inapplicable. *Id.* The Court is not convinced by Plaintiffs' interpretation of the Act. The plain meaning of "dispute" is a disagreement among two or more parties. As such, the more logical interpretation is that the "sexual harassment dispute" in this case did not arise when the former employee was harassed, but when she raised those allegations with Steward Partners. The Complaint and related documents before the Court do not indicate when that occurred.

pre-litigation statements made by an attorney that are "pertinent to a good faith anticipated litigation." *Yukos Cap. S.A.R.L. v. Feldman*, No. 15-CV-4964 (LAK), 2016 WL 4940200, at *4 (S.D.N.Y. Sept. 14, 2016) (quoting *Front, Inc.*, 24 N.Y.3d at 720). Fatal to Tucker's argument is that the pre-litigation privilege has generally been applied to statements made by attorneys, not witnesses. *See Giuffre v. Maxwell*, No. 15-CV-7433 (RWS), 2017 WL 1536009, *8 (S.D.N.Y. Apr. 27, 2017) ("The pre-litigation privilege is intended to protect attorneys from defamations [sic] claims . . . . Where the statement cannot be attributed to an attorney, there is no justification for protecting it by privilege."); *Loughlin v. Goord*, 558 F. Supp. 3d 126, 150 (S.D.N.Y. 2021), *aff'd*, No. 21-2460-CV, 2022 WL 9575656 (2d Cir. Oct. 17, 2022) (rejecting the application of the pre-litigation privilege because the allegedly defamatory statements were "not made by an attorney in the course of representing a client.").

Defendant cites to *Schwartz v. Chan*, 75 N.Y.S.3d 31, 32 (1st Dep't 2018) for the proposition that the pre-litigation privilege applies to witness statements. Def. Mem. at 19. The Court declines to adopt this interpretation. In *Schwartz*, the New York State Supreme Court, Appellate Division, citing *Front, Inc.*, noted that certain statements were protected by "the litigation privilege, since they were prepared in connection with a threatened litigation, at the direction of a potential defendant, by an individual who, at a minimum, was a potential witness." *Schwartz*, 75 N.Y.S.3d at 32. The opinion contains no additional analysis, does not specify the type of privilege being applied or who made the protected statements, and does not clearly extend the qualified pre-litigation privilege to witness statements.

Further, the Court has not identified, and Defendant has failed to supply, any cases extending the qualified pre-litigation privilege to claims for breach of a non-disparagement clause, as Tucker asks the Court to do here. To the contrary, as this Court noted in *Wexler v.*

*Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 314 (S.D.N.Y. 2019), the "Appellate Division has also contrasted absolute privileges with qualified privileges in holding that a qualified privilege—for communications between persons sharing a common interest—does not bar a claim for breach of a non-disparagement clause, because 'an absolute privilege protects a greater public interest than a qualified privilege.'" (quoting *Wolberg v. IAI N. Am., Inc.*, 77 N.Y.S.3d 348, 351 (1st Dep't 2018)). Although the Appellate Division's analysis in *Wolberg* is focused on a different qualified privilege, its statement about the greater protections afforded by an absolute privilege further cautions this Court against extending New York's pre-litigation privilege here.

### III.    Plaintiffs Fail to Adequately Plead that Tucker Breached the Separation Agreement by Use and Access of Plaintiffs' Property

Steward's allegations regarding Defendant's use and access of Plaintiffs' property are insufficiently particular to plausibly allege that Tucker breached the Separation Agreement.

"The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 637 (S.D.N.Y.), *aff'd sub nom. Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69 (2d Cir. 2018) (quoting *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*, 156 F. App'x. 349, 350–51 (2d Cir. 2005)). "Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, No. 12-CV-3584 (JCF), 2013 WL 1500333, at *9 (S.D.N.Y. Apr. 12, 2013) (quoting *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

Here, Steward claims that Tucker improperly accessed its confidential and proprietary information. They allege that Tucker continued to enter one of Steward's offices after his termination, directed Steward's personnel to place a trade on his behalf without prior company

authorization, and failed to timely close "Steward's client accounts." Compl. ¶¶ 31–32. However, the Complaint fails to explain, and the Court could not identify, which provisions of the Separation Agreement these actions allegedly violate.

The Court presumes that Plaintiffs believe this conduct violates the Return of Property clause because it is the only clause listed in the Complaint that is remotely related to these allegations. However, it is unclear how any of Tucker's alleged actions breach the Return of Property clause. The provision is primarily focused on ensuring that Tucker returns all company property, physical and digital, to Steward. None of Plaintiffs' allegations state that Tucker took or failed to return Steward's property. The Return of Property clause also warns that "[f]rom and after your Separation Date, you will no longer have access to the Company's computer system." ECF 18-1 at 4. Perhaps Plaintiffs believe that Tucker breached this part of the clause by directing Steward personnel to place a trade on his behalf. However, the fact that Tucker is alleged to have directed Steward personnel to place a trade on his behalf, instead of placing the trade himself, suggests that he did not have access to Steward's computer systems, and therefore did not violate the provision. Whatever Plaintiffs intended these allegations to demonstrate, they fail to support that Tucker breached the Separation Agreement.

Accordingly, the Court dismisses Plaintiffs' breach of contract claim related to Tucker's alleged use and access of the Plaintiffs' property. For reasons stated below, the Court permits Plaintiffs leave to amend this claim.

## IV.    Plaintiffs' Quasi-Contract Claims Are Not Yet Subject to Dismissal

Plaintiffs' remaining claims for breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and quantum meruit are based on the same allegations as their breach of contract claims and are therefore duplicative of those claims.

"Under New York law, the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 187 (2d Cir. 2023) (internal quotation marks and citation omitted); *see also Harris v. Provident Life and Accident Insurance Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."); *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 150 (S.D.N.Y. 2023) ("[I]n New York, unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists.") (internal quotation marks and citation omitted); *Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 17-CV-3556 (NSR), 2019 WL 1244293, at *2 (S.D.N.Y. Mar. 15, 2019) ("Courts generally dismiss claims for quantum meruit on the pleadings when it is clear from the face of the complaint that there exists an express contract that clearly controls.") (internal quotation marks and citation omitted). "If, however, there is a bona fide dispute as to the existence of a contract or whether the scope of an existing contract covers the disagreement between the parties, a party will not be required to elect his or her remedies and may proceed on both quasi contract and breach of contract theories." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 188 (2d Cir. 2023) (quoting *M/A-Com, Inc. v. State*, 78 A.D.3d 1293 (3d Dep't 2010)).

Here, it is unclear whether the scope of the parties' contracts cover at least some of the allegations—particularly with respect to Tucker's alleged violation of the Return of Property clause. Accordingly, the Court permits Plaintiffs to plead these quasi-contract claims in the alternative, for now.

## V.    Plaintiffs Are Granted Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). A court, however, "may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (internal citations and quotation marks omitted). The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (internal citation omitted) (affirming denial of leave to amend).

The Court finds that permitting Plaintiffs to amend their breach of contract claim with respect to Tucker's use and access would not be futile or in bad faith, nor would it cause undue delay or prejudice to Defendants given the early stage of the litigation. *Loc. 3599, NYC Dep't of Env't Prot. Tech. Pro. Emps. v. City of New York*, No. 23-CV-1035 (JGLC), 2024 WL 966077, at *16 (S.D.N.Y. Mar. 6, 2024) (collecting cases).

The Court will also permit Plaintiffs to amend the Complaint with respect to their allegations that Tucker breached the Non-Disparagement clause in the Separation Agreement. Plaintiffs allege that Tucker breached the Non-Disparagement clause because he (1) "breached his obligations set forth in the Separation Agreement by disparaging and otherwise causing harm, damage, injury and other wrong to Steward" by making "disparaging, negative and other wrongful statements about Steward and its employees, including in writing, well after signing the Separation Agreement," and (2) "made disparaging negative and other wrongful statements about Steward and its employees" in "an 'affidavit' provided by Defendant in a former employee's own, individual post-employment matter with Steward." Compl. ¶¶ 33–34, 45. Although these

allegations appear to refer to the affidavit Tucker provided another employee related to her sexual harassment dispute with Plaintiffs, the Complaint implies that Tucker violated the Non-Disparagement clause in other ways.

Yet, the Complaint fails to explain, other than through broad and conclusory allegations, how Tucker did so, the nature of Tucker's alleged disparaging comments, when such comments were made, to whom they were made, or even how they disparaged Steward. These allegations are required to state a claim. *See N. Shipping Funds I, LLC*, 2013 WL 1500333, at *9 (dismissing breach of contract claim based on non-disparagement provision where claimant "offered no factual allegations to support its claim that [Defendant] breached the non-disparagement clause.") (collecting cases); *cf. Taboola, Inc. v. Ezoic Inc.*, No. 17-CV-9909 (OWS), 2019 WL 465003, at *14 (S.D.N.Y. Feb. 6, 2019) (finding plaintiff's breach of a non-disparagement clause adequately pled where the amended complaint detailed that the defendant told third parties that plaintiff's product was inferior to other competing products, was malfunctioning, and causing a poor experience for users).

However, Tucker did not move to dismiss on this ground. And the Court finds no basis to *sua sponte* dismiss this claim without notice to Plaintiffs and an opportunity to be heard. *See, e.g.*, *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018). Accordingly, the Court will permit Plaintiffs to amend this portion of their Complaint. Should the allegations continue to make similarly conclusory assertions, Defendant is invited to move to dismiss on this ground.

For clarity, Plaintiffs are granted leave to file an amended complaint to flesh out (1) Tucker's alleged breaches of the Non-Disparagement clause and (2) how Tucker's visit to Plaintiffs' office violated the Separation Agreement. Plaintiffs are permitted to add factual details

to flesh out these existing claims, and to reorganize their claims with greater clarity and precision, but they may not add any new causes of action not included in the Complaint or discussed herein.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs are granted leave to file an Amended Complaint consistent with this Order by no later than **September 27, 2024**.

Dated:  September 16, 2024
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge